IVERS, Judge, filed the opinion of the Court. STEINBERG, Judge, filed a concurring opinion.
IVERS, Judge:
Veteran Seth Brambley appeals a May 30, 2001, decision of the Board of Veterans’ Appeals (Board or BVA) that (1) denied an increased disability rating for low back strain with degenerative arthritis of the lumbar spine with limitation of motion, currently rated as 40% disabling; (2) denied an increased rating for degenerative arthritis of the thoracic spine with pain on *22 motion, currently rated as 10% disabling; and (3) remanded a claim for a rating of total disability based on individual unem-ployability (TDIU). Record (R.) at 1-23. The Court will not address the merits of the remanded TDIU-rating claim because no final Board decision has been entered with respect to that claim, and it is not, therefore, properly before the Court. See 38 U.S.C. § 7252(a); Howard v. Gober, 220 F.3d 1341, 1344 (Fed.Cir.2000); see also 38 C.F.R. § 20.1100(b) (2002). For the reasons discussed below, the Court will vacate the Board decision and remand the matter for further proceedings consistent with this opinion.
I. FACTS
The appellant served on active duty with the U.S. Marine Corps from June 1985 to March 1987. R. at 102. In September 1997, he filed a claim seeking increased disability ratings for his service-connected back conditions and a claim seeking a TDIU rating. R. at 231-35. At that time, the veteran had a 20% disability rating for chronic low back strain with degenerative arthritis of the lumbosacral spine with limitation of motion, and a 10% disability rating for degenerative arthritis of the thoracic spine with pain on motion. R. at 145-47, 171-73. A VA regional office (RO) conducted a spine examination in August 1999. R. at 316-20. X-rays showed, inter alia, mild degenerative arthritic changes in the thoracic area, deformity of the antero-superior corner of the L4 vertebra, and degenerative changes in the lumbar region. R. at 319. A VA compensation and pension (C & P) social work examination was conducted in September 1999 to review the appellant’s work history and assess his employability. R. at 310-14. A November 1999 RO decision continued the 10% rating for his arthritis of the thoracic spine and awarded a rating increase to 40% for degenerative arthritis of the lumbar spine with limitation of motion. R. at 322-29. The same RO decision denied the TDIU-rating claim on the ground that the appellant’s condition did not meet the regulatory threshold described in 38 C.F.R. § 4.16(a) (2002) for that rating. R. at 327.
In the decision here on appeal, the Board reviewed the history of the appellant’s claims concerning his back disabilities. R. at 3-9. The Board summarized the relevant regulatory diagnostic codes and analyzed the appellant’s service-connected disabilities in light of the applicable codes. R. at 9-12. The Board concluded that the appellant was receiving the maximum schedular ratings allowed for his conditions. R. at 15-17. The Board also considered the applicability of an extras-chedular rating pursuant to 38 C.F.R. § 3.321(b)(1) (2002). The Board concluded that the appellant had not demonstrated that either of his back conditions, in and of itself, was sufficiently extraordinary or unusual to warrant referral to the VA C & P Service Director for consideration of an extraschedular rating. R. at 15-17.
With respect to the appellant’s TDIU-rating claim, the Board concluded that additional evidentiary development was necessary. R. at 18. In a seven-point remand order, the RO was directed to clarify inconsistencies in the appellant’s employment history, particularly the effect of his service-connected disabilities on his em-ployability. R. at 19-22. The RO was directed to provide for an orthopedic examination, if necessary, to determine whether the appellant was capable of performing sedentary or nonstrenuous employment. R. at 21.
II. ANALYSIS
The Board’s findings as to the degree of impairment resulting from a disability are factual and are reviewed by the *23 Court under the “clearly erroneous” standard under 38 U.S.C. § 7261(a)(4). See Francisco v. Brown, 7 Vet.App. 55, 57 (1994); Gilbert v. Derwinski, 1 Vet.App. 49, 53 (1990). The Board must base its decision on “all evidence and material of record” and must provide a “written statement of the Board’s findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record.” 38 U.S.C. § 7104(a), (d)(1); see Gilbert, 1 Vet.App. at 56-57. Pursuant to these statutory requirements, the Board must “account for the evidence which it finds to be persuasive or unpersuasive,” and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. Gilbert, 1 Vet.App. at 57. The Board’s statement must be adequate to inform the appellant of the basis for the discussion and to permit effective judicial review. See Fleshman v. Brown, 9 Vet.App. 548, 552-53 (1996); Allday v. Brawn, 7 Vet.App. 517, 527 (1995).
The appellant contends, inter alia, that the Board failed to provide an adequate statement of reasons or bases as to the issue of entitlement to an extraschedular rating under 38 C.F.R. § 3.321(b)(1). Appellant’s Brief (Br.) at 5. The Secretary counters that the Board reviewed the entire record and found that the evidence did not show that either the appellant’s low back disability or thoracic spine arthritis presented a disability picture unusual enough to render the application of the rating schedule impractical. Secretary’s Br. at 15.
Section 3.321(b)(1), which provides an avenue for additional review of the exceptional ease, states:
[WJhere the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.
38 C.F.R. § 3.321(b)(1) (2002). Extrasche-dular rating consideration is a component of the appellant’s claim for an increased rating. See Bagwell v. Brown, 9 Vet.App. 337, 339 (1996); Floyd v. Brown, 9 Vet.App. 88, 96 (1996) (stating that extrasche-dular rating consideration is “always part” of claim for schedular rating-increase claim). As the Court previously has held, the Board is obligated to consider the applicability of extraschedular ratings to a claimant’s increased-rating case. Floyd, supra. In circumstances where the Board does not refer a claim for extraschedular review, “the Board must provide an adequate statement of reasons or bases for its decision not to do so.” Colayong v. West, 12 Vet.App. 524, 537 (1999); see also Bagwell, 9 Vet.App. at 339; Kellar v. Brown, 6 Vet.App. 157, 161 (1994) (remanding for Board’s failure to provide adequate statement of reasons or bases regarding applicability of 38 C.F.R. § 3.321(b)(1)).
In the decision on appeal, the Board concluded that the evidence of record did not support referral of the appellant’s back disabilities for extraschedular consideration. Then, in remanding his TDIU-rating claim, the Board acknowledged that “additional development” was necessary and ordered the RO to investi *24 gate several specific inconsistencies in the record. R. at 18. Among other tasks, the RO was ordered to
2. [0]btain the veteran’s Chapter 31 vocational rehabilitation folder and associate it with the claims folder.
3. [Ascertain whether the veteran is in receipt of [Social Security Administration] disability benefits and obtain copies of any determination and/or awards made on the veteran’s behalf as well as the medical records relied upon concerning such.
4. [A]sk the veteran to clarify whether his employment with True Value Hardware was, in fact, his employment with Cotter and Company or [whether] they were different jobs with different employers. The veteran should also clarify his April 1992 statement that he was forced to leave four jobs.
5. [A]sk Cotter and Company the reason for the veteran’s resignation in 1994. The RO should also ascertain whether the veteran sustained any on-the-job injuries while working at the True Value Hardware distribution center or elsewhere after service and whether he filed any claims for Workers’ Compensation benefits in connection with injuries during post-service employment ... [T]he RO .should request copies of any such medical records, as well as any decision and the medical records relied upon in awarding the veteran disability benefits from any State Workers’ Compensation agency.
Seth D. Brambley, BVA 00-15003, at 19-20 (May 30, 2001). As the terms of the remand order make clear, the Board did not consider evidence as to the appellant’s employment and medical record sufficiently complete to enable it to adjudicate the TDIU claim properly and fairly.
It is difficult to understand how the Board can maintain these divergent positions concerning the completeness of the record. With respect to extraschedular consideration, the Board found the record sufficient to conclude that the appellant’s service-connected disabilities do not show a “marked interference with employment,” 38 C.F.R. § 3.321(b)(1). Nevertheless, the Board concluded that additional employment and medical information was necessary to adjudicate fairly the TDIU claim. Although it is well settled that extrasche-dular consideration and TDIU claims are not necessarily “ ‘inextricably inter-wined,’ ” Colayong, 12 Vet.App. at 537; see Kellar, 6 Vet.App. at 162, here both adjudications require a complete picture of the appellant’s service-connected disabilities and their effect on his employability. 38 C.F.R. §§ 3.321(b)(1), 4.16; see also 38 C.F.R. §§ 4.1, 4.2, 4.10 (2002). Thus, it was premature for the Board to decline extraschedular consideration where the record was significantly incomplete in a number of relevant areas probative of the issue of employability. Therefore, on remand, the Board must make the requisite findings of fact and provide an adequate statement of reasons or bases on the issue of whether referral of the extraschedular consideration issue is warranted in light of the terms of the TDIU remand order.
The Court will not at this time address the other arguments and issues raised by the appellant. See Best v. Principi, 15 Vet.App. 18, 20 (2001) (per curiam order) (“A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course, before this Court in an appeal, should the Board rule against him.”).
The Board’s inconsistent treatment of the appellant’s record is not altogether surprising given the ambiguity within the disability ratings regulations. Indeed, this Court has noted the absence of guidelines *25 for assigning ratings in extraschedular cases and for TDIU claims. See Floyd, 9 Vet.App. at 97 (noting that 38 C.F.R. § 3.321 does not include criteria or guidance for assigning particular extraschedular rating percentages); Vettese v. Brown, 7 Vet.App. 31, 35 (1994) (noting that TDIU claims focus on “ ‘subjective’ ” factors not considered by ratings schedule).
The need to streamline and clarify the regulations was a major topic of discussion at the Court’s Seventh Judicial Conference in September 2002. During the conference, the VA Under Secretary for Benefits summarized the efforts of the Secretary to revise, clarify, and restructure the C & P regulations in order to simplify them and make them more “user friendly” for veterans, their representatives, and ROs. As to the two issues addressed in this case, one possible avenue is to combine provisions for extraschedular ratings and a TDIU rating into a single regulation applying a continuum of disability. Such an approach might help avoid inconsistent application of the two rules.
III. CONCLUSION
Upon consideration of the forgoing, the May 30, 2001, BVA decision is VACATED and the matter is REMANDED for further adjudication consistent with this opinion. On remand the appellant is free to proffer his arguments and additional evidence to the Board, and the Board must address any such arguments or evidence. See Kay v. Principi, 16 Vet.App. 529, 534 (2002); Kutscherousky v. West, 12 Vet. App. 369, 372 (1999) (per curiam order) (on remand, appellant free to submit additional evidence and argument). “A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case.” Fletcher v. Derwinski, 1 Vet.App. 394, 397 (1991); see also 38 U.S.C. §§ 5103(a), 5103A. The Board shall proceed expeditiously. See Veterans’ Benefits Improvement Act of 1994, Pub.L. No. 103-446, § 302, 108 Stat. 4645, 4658 (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for “expeditious treatment” of claims remanded by the Board or Court); see also Drosky v. Brown, 10 Vet.App. 251, 257 (1997).