# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 13-0067

Evelyn M. Todd, Appellant,

v.

Robert A. McDonald,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided September 3, 2014)

*Michael P. Boudett*, of Boston, Massachusetts, was on the brief for the appellant.

*Will A. Gunn*, General Counsel; *David L. Quinn*, Assistant General Counsel; *Richard Mayerick*, Deputy Assistant General Counsel, and *Monique A.S. Allen*, all of Washington, D.C., were on the brief for the appellee.[1]

Before KASOLD, *Chief Judge*, and MOORMAN and BARTLEY, *Judges*.

BARTLEY, *Judge*: Veteran Robert M. Todd appealed through counsel a December 20, 2012, Board of Veterans' Appeals (Board) decision denying an evaluation in excess of 80% for bilateral defective hearing on an extraschedular basis pursuant to 38 C.F.R. § 3.321 and entitlement to a total disability evaluation based on individual unemployability (TDIU). Record (R.) at 3-12. On April 6, 2014, after briefing had been completed, Mr. Todd died. On July 7, 2014, counsel filed a notice of death, a copy of Mr. Todd's death certificate, and a motion to substitute as appellant the veteran's surviving spouse, Evelyn M. Todd. The Court granted the motion on July 23, 2014, and will consider the arguments advanced by the veteran as Mrs. Todd's own.

This appeal is timely and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Given the facts of this case and the lack of recent binding

---

[1] Will A. Gunn was General Counsel for the Secretary when his brief was submitted to the Court, but as of the date this decision was issued, Mr. Gunn had resigned.

precedent addressing certain aspects of TDIU evaluations, disposition by panel is appropriate. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990). For the reasons that follow, the Court will set aside the December 2012 Board decision and remand those matters for additional development and readjudication, for purposes of entitlement to accrued benefits, consistent with this decision.

## I. FACTS

Mr. Todd served on active duty in the U.S. Air Force from February 1952 to March 1954. R. at 521. In March 2009, he sought service connection for bilateral hearing loss based upon in-service exposure to jet engine noise. R. at 481-83, 487-97. He submitted a March 2009 private audiologist letter stating that the veteran suffered from "moderate sloping to profound sensorineural hearing loss bilaterally" and opining that this loss was as likely as not related to service based on the veteran's report of in-service noise exposure. R. at 446.

In May 2009, the veteran submitted a statement in which he reiterated the nature of his in-service exposure to noise and recounted a history of deteriorating hearing and the effect it had on his employment. He stated that, as part of his military duties at Craig Air Force Base in Alabama, he made frequent trips to the flight line where he was subjected to the noise of jet engines and the inhalation of jet exhaust fumes. R. at 413. While working for an engineering company in the 1970s, Mr. Todd "noticed that [he] was having some difficulty in talking on the telephone and understanding conversation in a nois[y] room." *Id.* By 1991, the veteran asserted, "[his] hearing had deteriorated to the point that [he] was reduced to entry level positions"; he was informed that he would not be able to keep his job as an office manager if he did not obtain hearing aids. R. at 415. At the time of writing, Mr. Todd said that even with hearing aids he could no longer speak on the telephone "with any degree of understanding as to what the other party is saying" and that even in-person conversations were difficult. *Id.*; *see also* R. at 483 (March 2008 statement: "I am now medically disabled and cannot work."). Also in May 2009, a VA audiologist opined that hearing loss was at least as likely as not caused by Mr. Todd's service. R. at 426-27.

The VA regional office (RO) in July 2009 granted service connection for bilateral hearing loss and assigned a 30% evaluation effective March 23, 2009. But the RO denied entitlement to TDIU, stating "the claimant has not been found unable to secure or follow a substantially gainful

2

occupation as a result of service connected disabilities." R. at 398-408. The following month, Mr. Todd filed a Notice of Disagreement (NOD) as to the 30% evaluation assigned and the denial of TDIU. In the NOD, he stated that he had been terminated from his engineering job because, even with hearing aids, his hearing was so degraded that he posed a liability to himself and other workers; he was required in 2002 to obtain another set of hearing aids to enable him to hear well enough to keep his job; he was unable to carry on as a Sunday school teacher because he could "no longer understand the statements, questions, or responses of the participants"; he is unable to communicate via the telephone any more; and he is "virtually isolated" and "unemployable" because of his hearing loss. R. at 384, 387. The RO continued to deny TDIU and a higher evaluation for hearing loss (R. at 291-315), and Mr. Todd appealed to the Board (R. at 274-85 (reiterating problems that hearing loss posed to obtaining and maintaining employment)).

The veteran testified at an April 2011 Board hearing that he has difficulty understanding people during conversation if there is any "extraneous noise around" and that "99 times out of 100" he is unable to hear telephone calls. R. at 220. He further testified that this difficulty hearing caused him to avoid contact with others and that he refrained from driving on advice that his difficulty hearing posed a hazard on the road. R. at 221-22. A letter from Mrs. Todd, the veteran's spouse, reiterated these problems. R. at 245-47. In June 2011, the Board remanded the hearing loss claim for a VA audiology examination and referred the TDIU matter to the RO.[2] R. at 156-72.

After administering a November 2011 audiology examination, the VA examiner diagnosed hearing loss and tinnitus; opined that hearing loss affected the ordinary conditions of daily life, including the ability to work; and stated that Mr. Todd, even with the use of hearing aids, will experience difficulty understanding conversational speech and "will likely be limited in his ability to function effectively in an employment setting that requires receptive communication skills, especially if the setting includes background noise." R. at 148-49. In December 2011, the RO increased the hearing loss evaluation to 80%, but no higher, and granted service connection for tinnitus with a 10% evaluation, both effective November 9, 2011. R. at 124-40. By way of a January

---

[2] The Board stated that referral of TDIU was necessary because the issue had not been adjudicated by the agency of original jurisdiction (R. at 158), despite the fact that the RO *had* previously adjudicated the matter (R. at 293, 313, 404).

5, 2012, letter, VA informed Mr. Todd of the increased benefits and also that he may qualify for VA vocational rehabilitation employment services. VA enclosed VA Form 28-8890, "Important Information about Vocational Rehabilitation Benefits," R. at 133, which informs veterans, among other things, that the VA vocational rehabilitation program helps them prepare for, get, and keep a suitable job and that, after a veteran applies for the program, a VA counselor schedules an evaluation requiring several hours to complete, the results of which are used to decide whether the veteran meets the conditions to receive vocational rehabilitation.

Also in January 2012, VA obtained the following audiology opinion as to Mr. Todd's employability:

> [The v]eteran has severe bilateral sensorineural hearing loss with poor word recognition ability. This hearing loss would significantly impact his ability to function in an employment setting where he was dependent upon verbal communication, even face-to-face in quiet [settings], or where he needed to depend on his hearing to differentiate sounds or signals (medical monitoring, troubleshooting electronics or motors, etc.). While his choices of employment might be somewhat limited, and assistive devices might be required, the hearing loss alone would not preclude him from obtaining gainful employment in a context where interpersonal communication or auditory monitoring is not required. Many deaf individuals have rewarding careers in a variety of employment fields. This opinion . . . is in regards to the veteran's hearing loss alone, and does not address the difficulties posed by his age or other disabilities.

R. at 92.

In February 2012, the Board denied an initial schedular evaluation for bilateral hearing loss in excess of 30% prior to November 9, 2011, and a schedular evaluation in excess of 80% from November 9, 2011;[3] and remanded for VA to adjudicate the issues of an extraschedular evaluation for bilateral hearing loss and TDIU, which the RO had not addressed despite several statements by the veteran and his spouse that he had been terminated from jobs due to hearing loss. R. at 74-88. In September 2012, the RO issued a Supplemental Statement of the Case (SSOC) denying (1) extraschedular evaluation because the case did not present "such an exceptional or unusual disability picture" and (2) TDIU because the evidence did not show that service-connected bilateral hearing loss prevented him from securing and maintaining gainful employment. R. at 39-45.

---

[3] Mr. Todd did not appeal the Board's denial of an increased schedular evaluation for bilateral hearing loss to this Court.

In an October 2012 response to the SSOC, Mr. Todd stated that, according to personnel at the local VA Vocational Rehabilitation and Employment Center, there were no facilities available to train him for a work environment that did not require interpersonal communication and auditory skills nor were there any potential employers seeking employees without interpersonal communication and auditory skills. R. at 17-18. That same month, the veteran submitted another TDIU application and indicated that his employment had ended in January 2003 because of service-connected disability. R. at 19-20.

In the December 2012 decision on appeal, the Board found that all necessary development had been accomplished, all VA and private medical records had been obtained, and all VA opinions and examinations of record were adequate. R. at 6. The Board then denied entitlement to TDIU and an extraschedular evaluation in excess of 80% for bilateral hearing loss. In denying referral for extraschedular evaluation under § 3.321, the Board determined that the schedular criteria sufficiently contemplated Mr. Todd's disability picture and that the evidence does not demonstrate such factors as marked interference with employment or frequent periods of hospitalization beyond that contemplated in the assigned 80% schedular rating. R. at 6-10. And, although the veteran met the disability percentage criteria under 38 C.F.R. § 4.16(a) for TDIU evaluation, the Board concluded that "the evidence fails to show that the [v]eteran's service-connected hearing loss, alone, or in combination with his only other service-connected disability, tinnitus, precludes substantially gainful employment." R. at 11. The Board stated that, "[f]or a veteran to prevail on a claim for TDIU, the record must reflect some factor [that] takes this case outside the norm." R. at 11. The Board noted that "the [v]eteran's service[-]connected disabilities have not been so severely disabling as to have rendered him or the average person similarly situated unable to secure or follow substantially gainful employment." *Id.* In denying both issues, the Board relied on the January 2012 VA audiology opinion. R. at 8-9, 11. This appeal followed.

## II. ANALYSIS

On appeal, Mrs. Todd seeks reversal and argues that the Board clearly erred in denying entitlement to TDIU by relying on the January 2012 VA examiner's observations on the employability of deaf individuals in general and by ignoring the medical and lay evidence supporting

5

entitlement to TDIU in his particular case. Appellant's Brief (Br.) at 5-11. In the alternative, she argues that the decision should be set aside and the matter remanded for the Board to provide an adequate statement of reasons or bases why, based on the specifics of his case, the veteran was not entitled to TDIU. *Id.* at 11-14. Finally, Mrs. Todd makes the same arguments with respect to the issue of referral for extraschedular evaluation. *Id.* at 17. The Secretary disputes Mrs. Todd's arguments as to the adequacy of the January 2012 examination report and contends that the evidence of record does not show entitlement to TDIU. Secretary's Br. at 9-12. The Secretary also contends that the Board properly found that referral for extraschedular evaluation was not warranted. *Id.* at 5-8.

## A. Entitlement to TDIU

It is well established in our caselaw that determining entitlement to TDIU requires an individualized assessment of each veteran to determine whether he or she is "in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." 38 C.F.R. § 4.16(a) (2014); *see VanMeter v. Brown*, 4 Vet.App. 477, 479 (1993); *Hatlestad v. Derwinski*, 3 Vet.App. 213, 215-217 (1992); *see also Norris v. West*, 12 Vet.App. 413, 421 (1999) ("'[A] claim for TDIU is based on an acknowledgment that even though a rating less than 100% under the rating schedule may be correct, objectively, there are subjective factors that may permit assigning a 100% rating to a particular veteran under particular facts . . . '" (quoting *Parker v. Brown*, 7 Vet.App. 116, 118 (1994))). Thus, unlike the percentage ratings in part 4 of title 38 of the Code of Federal Regulations, which are based on the average impairment in earning capacity caused by the service-connected disability, *see* 38 C.F.R. § 4.1 (2014), "entitlement to TDIU is based on an individual's particular circumstances," *Rice v. Shinseki*, 22 Vet.App. 447, 452 (2009). *Accord Locklear v. Shinseki*, 24 Vet.App. 311, 316 (2011).

The personalized nature of TDIU determinations is evident from the title of § 4.16: "Total disability ratings for compensation based on unemployability *of the individual*." 38 C.F.R. § 4.16 (emphasis added). As a December 1991 VA General Counsel precedent opinion interpreting § 4.16 held, TDIU determinations are to be made "without regard to whether an average person would be rendered unemployable under the circumstances." VA Gen. Coun. Prec. 75-91, at 8 (Dec. 27, 1991). Although not bound by VA General Counsel precedent opinions, this Court in 1993 declared

6

"substantial agreement" with this opinion, finding that "'Congress . . . has authorized consideration in disability ratings of factors affecting the individual veteran, rather than the 'average person', where necessary to reflect the veteran's true level of disability.'" *Hatlestad*, 3 Vet.App. at 216 (quoting VA Gen. Coun. Prec. 75-91, at 8).

Mrs. Todd argues that the Board erred because it accepted and relied upon that part of the January 2012 audiology report that stated that the veteran could obtain gainful employment because "[m]any deaf individuals have rewarding careers in a variety of employment fields." R. at 92; *see* R. at 9, 11. However, we are not fully persuaded by Mrs. Todd's argument. We agree that, had the examiner opined solely that Mr. Todd was capable of substantially gainful employment because deaf persons on average are able to procure and maintain substantially gainful employment, and had the Board relied entirely on that opinion to deny entitlement, that decision would be erroneous. We also agree that whether people with a disability like the veteran's are usually employable is generally not relevant to TDIU determinations, which are based on an individual's specific circumstances. Any reference to whether other individuals, or others as a group, are generally employable despite a particular disability, without further, careful explanation, may indicate that the Board gave undue consideration to irrelevant and potentially prejudicial information. However, we find no prejudicial error here. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (noting that the statute requiring this Court to "take due account of prejudicial error [ ] requires the Veterans Court to apply the same kind of 'harmless error' rule that courts ordinarily apply in civil cases").

The VA examiner discussed Mr. Todd's particular disability and complaints and assessed his ability to obtain gainful employment. R. at 92. The Board stated that "the [v]eteran's service-connected disabilities have not been so severely disabling as to have rendered *him* or the average person similarly situated unable to secure or follow substantially gainful employment." R. at 11 (emphasis added). The Board's specific reference to the veteran, with an alternative reference to others "similarly situated," indicates that the Board considered the January 2012 audiologist's opinion as an individualized assessment. *See Janssen v. Principi*, 15 Vet.App. 370, 379 (2001) (per curiam) (rendering decision on the Board's statement of reasons or bases "as a whole"). Although the Board's choice of words may not have been optimal, its discussion and assessment of Mr. Todd's individual

7

circumstances made clear that it did not engage in prohibited analysis by considering the effects of the average impairment of veterans as opposed to conducting a personalized assessment of Mr. Todd.

Although we find no prejudicial error as to that aspect of the Board decision, the Board is required to specifically address material record evidence that is potentially favorable to the claim. *See Thompson v. Gober*, 14 Vet.App. 187, 188 (2000) (per curiam order). In his October 2012 letter, Mr. Todd stated that personnel at the Vocational Rehabilitation and Employment Center[4] had informed him that with his hearing loss there were no facilities available to train him and that there were no potential employers seeking to employ people with his disability. R. at 17-18. He also indicated that he had undergone some type of vocational rehabilitation evaluation that painted a grim picture of his ability to obtain gainful employment. *Id*.

Veterans like Mr. Todd, with a service-connected disability that is at least 10% disabling, are eligible for VA vocational rehabilitation benefits. *See* 38 U.S.C. §§ 3100-3122; 38 C.F.R. § 21.1 *et seq.* (2014). The purpose of VA vocational rehabilitation and employment programs is "to provide for all services and assistance necessary to enable veterans with service-connected disabilities to achieve maximum independence in daily living and, to the maximum extent feasible, to become employable and to obtain and maintain suitable employment." 38 U.S.C. § 3100; *accord* 38 C.F.R. § 21.1. To that end, VA provides initial and extended evaluations to determine a veteran's employment handicap and the feasibility of achieving a vocational goal. 38 C.F.R. §§ 21.50-.53, .57-.59.

The failure to address the potentially favorable material evidence referenced in Mr. Todd's October 2011 letter frustrates judicial review. *See Thompson*, 14 Vet.App. at 188; *Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (holding that the Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court"); *see also Foster v. Principi*, 4 Vet.App. 35, 36 (1993) (finding error in the Board's failure to discuss vocational rehabilitation and employment records).

---

[4] Because VA vocational rehabilitation services are provided by VA's Vocational Rehabilitation and Employment program, we presume that this is the office to which Mr. Todd referred. *See* http://www.benefits.va.gov/vocrehab/index.asp.

We also note that, not only did the Board not address this evidence, but it appears that the Board did not even obtain the evidence referenced in the October 2012 letter because the record of proceedings does not contain Vocational Rehabilitation and Employment Center records covering the period addressed in that letter. *See* U.S. VET. APP. R. 28.1 (stating that the record of proceedings before the Court should contain all records relevant to the issues on appeal).

The duty to assist includes making "as many requests as are necessary to obtain relevant records from a Federal department or agency." 38 C.F.R. § 3.159(c)(2) (2014). "VA will end its efforts to obtain [such] records . . . only if VA concludes that the records sought do not exist or that further efforts to obtain those records would be futile." *Id.* Board determinations as to whether the Secretary has fulfilled the duty to assist are findings of fact subject to the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Nolen v. Gober*, 14 Vet.App. 183, 184 (2000). On remand, the Board is required to obtain all potentially relevant records that the claimant adequately identifies and authorizes the Secretary to obtain. *See* 38 U.S.C. § 5103A(a)(1), (b)(1); *Moore v. Shinseki*, 555 F.3d 1369, 1372-75 (Fed. Cir. 2009); 38 C.F.R. § 3.159(c).

In addition, the Board stated that, in deciding entitlement to TDIU, it relied on the January 2012 VA audiology examination and other "objective evidence of record." R. at 11. The Board then denied entitlement to TDIU because "the preponderance of the *medical* evidence of record show[ed] that the service-connected disabilities do not result in [TDIU]." R. at 11 (emphasis added). The Board must provide an adequate statement of reasons or bases for its findings on all material issues of fact and law presented. 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *Allday*, 7 Vet.App. at 527; *Caluza v. Brown*, 7 Vet.App. 498, 507 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

The Court agrees with Mrs. Todd that the Board failed to adequately address additional non-medical evidence that is potentially relevant to the TDIU determination. *See Allday*, 7 Vet.App. at 527; *Caluza*, 7 Vet.App. at 507 (1995). Mr. Todd provided to VA repeated explanations of the effect of his hearing loss on his ability to function and gain employment. He indicated that his hearing loss

9

affected him so severely that he could no longer use the telephone, could barely understand face-to-face conversations, and forwent driving out of safety concerns; he stated that his disability had caused him to be fired from two jobs, he is not currently working, and he is unable to obtain work due to his service-connected hearing loss. R. at 220-22, 274-85, 384, 387, 413, 415, 483. As noted above, he stated in his October 2012 letter that the local VA Vocational Rehabilitation and Employment Center advised him that there were no facilities available to train him for a work environment that does not require interpersonal communication and auditory skills nor were there any potential employers seeking employees without these skills. R. at 17-18. Mrs. Todd also provided lay statements affirming the effect of hearing loss on Mr. Todd's ability to work and function in society. R. at 245-47. The Board's failure to address this favorable non-medical evidence relevant to the TDIU determination is another basis for remand. *See Allday*, 7 Vet.App. at 527; *Caluza*, 7 Vet.App. at 507 (1995).

In sum, because the Board failed to address potentially favorable material evidence, the Court will set aside the December 2012 decision on appeal and remand the matter for additional development and readjudication consistent with this decision. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

Although Mrs. Todd argues that reversal is appropriate, the Court disagrees. "[W]here the Board has performed the necessary fact-finding and explicitly weighed the evidence, [this Court] should reverse when, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed." *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013); *see Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992). In other words, reversal is appropriate "when the only permissible view of the evidence is contrary to the Board's decision." *Gutierrez v. Principi*, 19 Vet.App. 1, 10 (2004). Here, the Board failed to explicitly weigh potentially favorable material evidence. Thus, reversal is not appropriate. *See Deloach*, 704 F.3d at 1380.

In light of the Court's decision, the Board must address the potentially favorable material record evidence, obtain such referenced evidence if not already in the record, and determine whether Mr. Todd could secure or follow a substantially gainful occupation or whether further evidence needs

to be developed.[5] *See Tyrues v. Shinseki*, 23 Vet.App. 166, 182-84 (2009) (en banc), *vacated and remanded*, 467 F. App'x 889 (Fed. Cir. 2012), *reinstated as modified by* 26 Vet.App. 31 (2012), *aff'd by* 732 F.3d 1351 (Fed. Cir. 2013); 38 C.F.R. § 19.9(a) (2014) ("If further evidence, clarification of the evidence, correction of a procedural defect, or any other action is essential for a proper appellate decision, a [Board member] shall remand the case to the agency of original jurisdiction, specifying the action to be undertaken."); *see also* 38 C.F.R. § 4.2 (2014) (instructing VA adjudicators to return as inadequate an examination report that is not supported by sufficient findings or does not contain sufficient detail).

## B. Extraschedular Evaluation

In "the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation Service, upon field station submission, is authorized to approve . . . an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." 38 C.F.R. § 3.321(b)(1) (2014). Referral for extraschedular consideration is warranted where "evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate" and "the claimant's exceptional disability picture exhibits other related factors," such as marked interference with employment or frequent periods of hospitalization. *Thun v. Peake*, 22 Vet.App. 111, 115-16 (2008), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009); *see Anderson v. Shinseki*, 22 Vet.App. 423, 427 (2009) (outlining the "elements that must be established before an extraschedular rating can be awarded"); 38 C.F.R. § 3.321(b)(1).

---

[5] Because Mr. Todd died after October 10, 2008, the Court on July 23, 2014, permitted Mrs. Todd to substitute under the auspices of 38 U.S.C. § 5121A. *See Hyatt v. Shinseki*, 566 F.3d 1364, 1367 n.1 (Fed. Cir. 2009); *Breedlove v. Shinseki*, 24 Vet.App. 7, 15 (2010) (per curiam order). VA has recognized that for a survivor substituted under section 5121A, a decision as to entitlement to accrued benefits is not restricted to consideration of the evidence contained in the claims file at the time of the deceased VA claimant's death. *See* VA Fast Letter 10-30 (Aug. 10, 2010) ("Unlike prior accrued benefits claims, [under section 5121A] the record is not closed on the date of death of the original claimant[ ] but remains open for the submission and development of any pertinent additional evidence."); *see also Copeland v. Shinseki*, 26 Vet.App. 86, 88 (2012) ("The Secretary's proposed interpretation of [section 5121A] is that a substitute claimant—as opposed to an accrued benefits claimant—'could submit evidence and generally would have the same rights regarding hearings, representation, and appeals as would have applied to the claimant had the claimant not died.'" (quoting Substitution in Case of Death of Claimant, 76 Fed. Reg. 8666, 8669 (proposed Feb. 15, 2011) (to be codified at 38 C.F.R. § 3.10(f)(3)))). Thus, additional evidence may be developed on remand, and Mrs. Todd is not confined to the evidence in the file at the date of the veteran's death.

Consideration of referral for an extraschedular evaluation requires a three-fold inquiry. *Thun*, 22 Vet.App. at 115. First, the Board must determine whether the schedular evaluation adequately contemplates the veteran's disability picture. *Id.* "[I]f the criteria reasonably describe the claimant's disability level and symptom[s], then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required." *Id.* "[I]f the schedular evaluation does not contemplate the claimant's level of disability and symptom[s] and is found inadequate," then the second inquiry is "whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as 'governing norms.'" *Id.* at 116 (quoting 38 C.F.R. § 3.321(b)(1)). If the veteran's disability picture meets the second inquiry, then VA must refer the case "to the Under Secretary for Benefits or the Director of the Compensation Service" for the third inquiry, that is, to determine whether an extraschedular evaluation is warranted. *Id.*; *see also Anderson*, 22 Vet.App. at 427.

In *Brambley v. Principi*, the Board found that referral for extraschedular consideration was not warranted because "the record [was] sufficient to conclude that the appellant's service-connected disabilities do not show a marked interference with employment." 17 Vet.App. 20, 24 (2003) (internal quotation marks omitted). However, the Board also found that it was necessary to remand the issue of entitlement to TDIU because there were "specific inconsistencies in the record" regarding the appellant's employability that could only be resolved by obtaining VA vocational rehabilitation records, ascertaining whether the appellant was receiving Social Security disability benefits and obtaining any such records, and having the veteran and his former employers explain the reasons why he left his previous jobs. *Id.*

On appeal, the Court explained that, "[a]lthough it is well-settled that extraschedular consideration and TDIU . . . are not necessarily inextricably intertwined, . . . here both adjudications require a complete picture of the appellant's service-connected disabilities and their effect on his employability." *Id.* (internal quotation marks and citations omitted). The Court noted the Board's "divergent positions concerning the completeness of the record" and concluded that "it was premature for the Board to decline extraschedular consideration where the record was significantly incomplete in a number of relevant areas probative of the issue of employability." *Id.* Thus, the Court remanded the appellant's low back claims for readjudication that took into account any

12

evidence of employability developed as a result of the Board's remand of the issue of entitlement to TDIU. *Id*. at 24-25.

In this case, the Court has determined that the issue of entitlement to TDIU must be remanded for the Board to address, and perhaps obtain, potentially favorable material evidence, including any VA Vocational Rehabilitation and Employment records. Because the Board also failed to address, and perhaps obtain, this evidence in denying referral for extraschedular consideration, the Court will also remand the issue of extraschedular consideration to ensure that the Board has a complete record upon which to decide and address all potentially favorable material evidence regarding any extraschedular issues associated with Mrs. Todd's claim.[6]

On remand, Mrs. Todd is free to submit any additional evidence and argument in accordance with section 5121A and *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order), and the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board shall proceed expeditiously, in accordance with 38 U.S.C. §§ 5109B and 7112.

### III. CONCLUSION

Upon consideration of the foregoing, the December 20, 2012, Board decision with respect to TDIU and extraschedular consideration is SET ASIDE, and the matter is REMANDED, consistent with this decision, for additional development and readjudication for accrued benefits purposes.

---

[6] Of note, as this opinion was circulating the U.S. Court of Appeals for the Federal Circuit issued its decision in *Johnson v. McDonald*, ___ F.3d ___, ___, No. 2013-7104, 2014 WL 3844196 at *3 (Fed. Cir. Aug. 6, 2014), which held that the "plain language of § 3.321(b)(1) provides for referral for extra-schedular consideration based on the collective impact of multiple disabilities." The record of proceedings in Mr. Todd's appeal reflects that, while alive, in addition to having had an 80% disability evaluation for bilateral defective hearing that is addressed in the Board decision on appeal, he also had a 10% disability evaluation for tinnitus effective November 9, 2011. R. at 135. Accordingly, on remand the Board should consider the effect of *Johnson*.