Citation Nr: 1528208 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 07-29 905 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUE

Entitlement to a total rating based on individual unemployability (TDIU).


ATTORNEY FOR THE BOARD

N. T. Werner, Counsel


INTRODUCTION

The Veteran served on active duty from November 1974 to November 1976.

This matter originally came before the Board of Veterans' Appeals (Board) from a decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana. Most recently, the Board in November 2011 remanded the above issue for further development.


FINDINGS OF FACT

1. At all times prior to February 18, 2010, the Veteran had one serviced-connected disability, posttraumatic headaches with dizziness and sleeplessness, rated as 30 percent disabling from December 13, 2008, and the Veteran has been found not to be unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities prior to February 18, 2010. 

2. Since February 18, 2010, the Veteran has two service-connected disabilities, posttraumatic headaches with dizziness and sleeplessness rated as 30 percent disabling from December 13, 2008, and cognitive impairment and other residuals of traumatic brain injuries (TBI) not otherwise classified rated as 40 percent disabling from February 18, 2010, which are treated as one disability rated as 60 percent disabling, and the most probative evidence of record makes it likely that these two disabilities render him incapable of substantial gainful employment since that date. 


CONCLUSION OF LAW

The criteria for a TDIU have been met since February 18, 2010. 38 U.S.C.A. §§ 1154(a), 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.1, 4.16, 4.19 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

A. Duty to Notify

VA has a duty to notify a claimant as to the information and evidence necessary to substantiate a claim for VA benefits. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Here, the Veteran has been sent several notice letters providing the necessary information, including in May 2012 and July 2012. See 38 U.S.C.A. § 5103. A case-specific notice is not required and any other notice defect is deemed not prejudicial. See VAOPGCPREC 6-2014; Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Therefore, the duty is satisfied.

B. Duty to Assist

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate the claims. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c)(d). VA will help a claimant obtain records relevant to the claim(s) whether or not the records are in Federal custody, and VA will provide a medical examination and/or opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4).

In this case, VA has secured all available and identified pertinent in-service and post-service evidence including the Veteran's service treatment records as well as his post-service records from the Social Security Administration (SSA) and the Chicago VA Medical Center. Reasonable attempts have also been exhausted to obtain information from his private employers, and that information is of record where obtainable. The Veteran was also afforded a VA examination in July 2012 and an addendum was obtained to that examination in April 2015. The information in these VA examinations is adequate to inform the Board on all complex medical matters raised in the appeal. 

C. Stegall Compliance

The Board also finds that there was substantial compliance with the prior Board remand directives from November 2011. Specifically, the Veteran was sent, and returned, a VA Form 21-8940, Veteran's Application for Increased Compensation Based on Unemployability. Also, the post-remand record also shows that the AOJ in August 2014, October 2014, and December 2014 attempted to obtain information from three of the Veteran's former employers. Moreover, the Veteran was notified in letters dated in August 2014, October 2014, and December 2014 that he was ultimately responsible in providing VA with this information if it could not be obtained. Later in August 2014, the RO received a reply from Tube City, Inc. In January 2015, the RO also received a reply from Acme Steel along with October 2001 and May 2002 letters. As to the third employer, in December 2014 the RO was notified by the Veteran and/or the employer that no records were available. Finally, a supplemental statement of the case (SSOC) was issued April 2015, as directed by the Board. Thus, there was substantial compliance with the Board remand directives. See 38 U.S.C.A. § 5103A(b); Stegall, supra; Dyment v. West, 13 Vet. App. 141 (1999); D'Aries v. Peake, 22 Vet. App. 97 (2008). 

For the above reasons, the Board finds the duties to notify and assist have been met, all due process concerns have been satisfied, and the appeal may be considered on the merits at this time.

II. Analysis

The Veteran asserts that he last worked in 2001 and he has been to disabled to work since 2002 due to his service-connected disabilities. 

A. Applicable Law

Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340. If the total rating is based on a disability or combination of disabilities for which the Schedule for Rating Disabilities provides an evaluation of less than 100 percent, it must be determined that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age. 38 C.F.R. § 3.341. 

If the schedular rating is less than total, a total disability evaluation can be assigned based on individual unemployability if the Veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disability, provided that the Veteran has one service-connected disability rated at 60 percent or higher; or two or more service-connected disabilities, with one disability rated at 40 percent or higher and the combined rating is 70 percent or higher. In calculating whether a Veteran meets that schedular criteria, disabilities resulting from one incident, including the bilateral factors, are considered one disability. The existence or degree of non-service connected disabilities will be disregarded if the above-stated percentage requirements are met and the evaluator determines that the Veteran's service-connected disabilities render him incapable of substantial gainful employment. 38 C.F.R. § 4.16(a). 

All Veterans who are shown to be unable to secure and follow a substantially gainful occupation by reason of service-connected disability shall be rated totally disabled. 38 C.F.R. § 4.16(b). In cases where the schedular criteria are not met, an extraschedular rating is for consideration. 38 C.F.R. § 3.321. 

Unlike the percentage ratings in part 4 of title 38 of the Code of Federal Regulations, which are based on the average impairment in earning capacity caused by the service-connected disability, entitlement to TDIU is based on an individual's particular circumstances. A personalized and individualized assessment must be made. Todd v. McDonald, 27 Vet. App. 79 (2014). The central inquiry is, "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). An assessment of TDIU entitlement based on the combined effects of all service-connected disabilities should address all such disabilities. Therefore, the cumulative effects (functional impairment) of all service-connected disabilities should be addressed in determining if the service-connected disabilities prevent substantially gainful employment. Floore v. Shinseki, 26 Vet. App. 376 (2013).
 
The adjudicator, rather than a medical examiner, is responsible for determining whether a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. A medical examiner's role is limited to "providing a 'full description of the effects of disability upon the person's ordinary activity.'" Floore, 26 Vet. App. at 381; see also Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013).

After careful consideration of the evidence, any reasonable doubt remaining on any material question of law or fact is to be resolved in favor of the claimant. 38 C.F.R. § 4.3; Fagan v. Shinseki, 573 F.3d 1282, 1287 (2009).

B. Discussion

In applying the applicable law to the facts of this case, the Board must find that a TDIU is for assignment beginning from February 18, 2010, but not earlier. The reasons follow. 

Prior to February 18, 2010

Prior to February 18, 2010, the Board must find that the Veteran was not unemployable by reason of service-connected disabilities. Prior to that date, his service-connected disability picture was limited to posttraumatic headache disorder, to include symptoms of dizziness and sleeplessness, which was assigned staged ratings of 10 percent prior to December 13, 2008, and 30 percent from that date. Because neither of these percentages meets the percentage requirements set forth in § 4.16(a), the question is whether he was "unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities," as set forth in § 4.16(b). 

On this question, the Board previously found in its November 2011 decision, page 38, that "nothing in the record shows that his service connected posttraumatic headaches with dizziness and sleeplessness, acting alone, caused his unemployability." This finding was made in the context of determining whether a higher rating could be assigned for the headache disorder and not whether a TDIU was warranted under § 4.16(b). Nonetheless, the current appeal arises from the same matter decided by the Board in November 2011. Thus, the legal and factual questions at issue here are, ultimately, the same. See 38 C.F.R. § 20.1303; Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014); Rice, 22 Vet. App. at 453-54. 

Because the Veteran did not appeal the Board's November 2011 determination, it is now final and binding in the current matter, and the question of whether the Veteran's headache disorder prior to December 13, 2008, precluded his employment, cannot be relitigated. Thus, the case cannot be referred for extraschedular consideration involving the time period prior to February 18, 2010, and the appeal for a TDIU prior to February 18, 2010, must be denied. 

From February 18, 2010

Beginning from February 18, 2010, the Board finds that the requirements for the award of a TDIU are met. 

As a threshold matter, the Veteran's combined service-connected rating satisfies the schedular criteria under § 4.16(a). Specifically, from February 18, 2010, his service-connected posttraumatic headaches with dizziness and sleeplessness were rated at 30 percent, and his service-connected cognitive impairment and other residuals of TBI not otherwise classified was rated at 40 percent. These two disabilities, although listed separately, must be treated as one disability because they arise from the same incident. 38 C.F.R. § 4.16(a). Because the combined rating for these disabilities is 60 percent, the schedular criteria for TDIU are met. See 38 C.F.R. § 4.25 (2014). 

Furthermore, the evidence of record tends to establish that the aggregate effect of the Veteran's service-connected disabilities would most likely prevent employment in either a sedentary or physical job because of the pain and memory impairment associated with the conditions. For instance, in March 2013, the Veteran's VA psychologist noted that the Veteran's "TBI/headaches that are incapacitating and prostrating." Earlier, in December 2012, this same VA psychologist documented that the Veteran "does not have the competencies to work as he has severe headaches, inability to focus in a sustained manner, to learn new techniques or processes and memory loss." Correspondingly, the VA treatment records, including, most recently, in September 2014, repeatedly document that the Veteran's "TBI has had significant impact on memory and ability to remain focused." In June 2014, it was noted that he "loses names, addresses, events and so forth." In March 2014, he described being unable to "how to even turn on a computer game even though he had played the game often some years ago." It seems unlikely, in the Board's judgment, that the Veteran could maintain any type of sedentary or physical employment in light of the aggregate effect of these functional impairments. 

In April 2015, a VA medical expert indicated that the Veteran could work sedentary employment "[a]s long as the employer understands that the [V]eteran might have an occasional prostrating headache[.]" The Board finds this opinion difficult to reconcile with the totality of the remaining evidence, which indicates that the Veteran would have difficulty working even a sedentary occupation in light of the ongoing headaches and memory difficulties associated with this service-connected disabilities. As such, this opinion is not especially persuasive evidence. 

In conclusion, the Board finds, after resolving all reasonable doubt in the Veteran's favor, that the appeal for a TDIU must be granted effective from February 18, 2010, but not earlier. 


ORDER

A total rating based on individual unemployability by reason of service-connected disability effective from February 18, 2010, but not earlier, is granted. 



____________________________________________
C. BOSELY
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs