Citation Nr: AXXXXXXXX
Decision Date: 10/29/21 Archive Date: 10/29/21

DOCKET NO. 200519-85154
DATE: October 29, 2021

ORDER

Entitlement to a compensable disability rating for the service-connected left biceps femoris strain is denied.

Entitlement to a total disability rating due to individual unemployability (TDIU) is denied.

REMANDED

Entitlement to a disability rating in excess of 40 percent for the service-connected lumbosacral strain with intervertebral disc syndrome and bilateral paravertebral muscular strain is remanded.

Entitlement to a disability rating in excess of 10 percent for the service-connected sciatica of the left lower extremity is remanded.

Entitlement to a disability rating in excess of 10 percent for the period prior to February 4, 2020, and to a disability rating in excess of 20 percent from that date for the service-connected sciatica of the right lower extremity is remanded.

FINDINGS OF FACT

1. The preponderance of the evidence demonstrates that the Veteran is not currently experiencing symptoms related to his left biceps femoris strain and has not been experiencing those symptoms during or proximate to the appeal period.

2. The preponderance of the evidence is against a finding that the Veteran's service-connected disabilities have resulted in the inability to obtain or maintain a substantially gainful course of employment.

CONCLUSIONS OF LAW

1. The criteria for entitlement to a compensable disability rating for left biceps femoris strain have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.73, Diagnostic Code 5313.

2. The criteria for entitlement to TDIU have not been met. 38 U.S.C. §§ 501, 5107; 38 C.F.R. §§ 3.102, 4.16, 4.25.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from July 1992 to April 2002. These matters come before the Board of Veterans' Appeals (Board) on appeal from a rating decision issued in March 2020 following receipt, in May 2020, of a VA Form 10182, Decision Review Request: Board Appeal, in which the Veteran elected the Direct Review docket. Due to this election, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal. 38 C.F.R. § 20.301.

Increased Rating Left Biceps Femoris Strain

The Veteran contends that he is entitled to a higher rating for his left biceps femoris strain. This disability is rated under 38 C.F.R. § 4.73, Diagnostic Code 5313, for impairment of Muscle Group XIII. This group of muscles governs the extension of hip and flexion of knee; outward and inward rotation of flexed knee; acting with rectus femoris and sartorius, synchronizing simultaneous flexion of hip and knee and extension of hip and knee by belt-over-pulley action at knee joint and the posterior thigh group, hamstring complex of 2- joint muscles: (1) Biceps femoris; (2) semimembranosus; (3) semitendinosus. Under Diagnostic Code 5313, a non-compensable (0 percent) evaluation is awarded for slight impairment. A 10 percent rating requires moderate impairment. A 30 percent rating requires moderately severe impairment. A 40 percent rating requires severe impairment.

The preponderance of the evidence is against a compensable rating for the Veteran's left biceps femoris strain. The Board acknowledges his lay reports of symptoms of pain in the left leg. However, as the March 2020 compensation and pension (C&P) examiner indicated, the evidence of record is that these symptoms are the result of, and relate to, the Veteran's service-connected back condition. The examiner found no indication of symptoms from a biceps femoris strain. Similarly, the March 2019 C&P examination found no symptoms of a left biceps femoris strain, and the Veteran's treatment records during the appeal period and one year prior to the date that the Veteran's claim was received do not contain instances of complaints or treatment for a left biceps femoris symptoms. Consequently, the Board finds that the preponderance of the evidence is against a finding that the Veteran's left biceps femoris strain has met the criteria for a compensable disability rating, because the preponderance of the evidence is against a finding that this disability has caused any symptoms during the relevant time period. 

In conclusion, the Board finds that the preponderance of the evidence is against the Veteran's appeal for a compensable rating for left biceps femoris strain. In denying such a rating, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

TDIU

The Veteran seeks a TDIU. The claim for TDIU arises from a single paragraph in argument submitted by the Veteran's representative in January 2021 and is raised pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009). The representative contends that the Veteran's service-connected conditions have caused the Veteran to be unable to obtain or maintain a substantially gainful course of employment.

A TDIU may be assigned, where the schedular rating is less than total, where a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. § 4.16(a). To qualify for schedular consideration of a TDIU, if there is only one such disability, this disability shall be ratable at 60 percent or more, and, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. Id. 

For the purposes of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) Disabilities of one or both upper extremities, one or both lower extremities, including the bilateral factor, if applicable; (2) disabilities resulting from common etiology or a single accident; (3) disabilities affecting a single body system, e.g., orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric; (4) multiple injuries incurred in action; or (5) multiple disabilities incurred as a prisoner of war. 38 C.F.R. § 4.16(a); see Moody v. Wilkie, 30 Vet. App. 329, 339 (2018) (combining disabilities as "one disability" to meet the rating threshold of § 4.16(a) requires the use of the combined rating table). 

The phrase "unable to secure and follow a substantially gainful occupation" contains both economic and noneconomic components. See Ray v. Wilkie, 31 Vet. App. 58, 73 (2019). The economic component refers to an occupation earning more than marginal income (outside of a protected environment) as determined by the U.S. Department of Commerce as the poverty threshold for one person. Id. The noneconomic component requires a determination as to a veteran's ability to secure and follow such employment. Id. Attention should be given to a veteran's history, education, skills, and training; whether the veteran has the physical ability (both exertional and nonexertional) to perform the types of activities required by the occupation at issue (e.g., lifting, bending, sitting, standing, walking, climbing, as well as auditory and visual limitations); and whether the veteran has the mental ability to perform the activities required by the occupation at issue (e.g., memory, concentration, ability to adapt to change, handle work place stress, get along with coworkers, and demonstrate reliability and productivity). Id.

An award of a TDIU is an individualized determination, specific to a veteran's particular circumstances, e.g., their history, education, skills, and training. See Todd v. McDonald, 27 Vet. App. 79, 85 (2014). It does not require a showing of 100 percent unemployability. Roberson v. Principi, 251 F.3d 1378, 1385 (Fed. Cir. 2001). The ultimate question is whether the veteran is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

The Veteran has a combined disability rating of 80 percent, and both his obstructive sleep apnea (OSA) and lumbosacral strain are rated 40 percent disabling for the entirety of the relevant appeal period. The record demonstrates that his service-connected disabilities meet the predicate percentages for a TDIU. 

Unfortunately, the Board finds that a TDIU is not warranted. The Veteran's work is largely undiscussed during the period on appeal. However, the evidence that does exist suggests that he is employed in a gainful capacity. Although the C&P examinations regarding his back and radiculopathy conditions discuss the effects of these conditions on his functioning and work, he does not appear to have reported that these conditions have prevented him from working to the examiners during the period on appeal in this case. The lone reference to the Veteran's work in the evidence is from a June 2019 VA treatment record where he appears to indicate that he was employed. In the absence of any further evidence regarding his employment or even a lay statement from him that his conditions have prevented him from obtaining or maintaining employment, the Board finds that the preponderance of the evidence is against a finding that his service-connected conditions have resulted in his unemployability. A TDIU is, thus, not warranted.

REASONS FOR REMAND

Entitlement to a disability rating in excess of 40 percent for the service-connected lumbosacral strain with intervertebral disc syndrome and bilateral paravertebral muscular strain

Entitlement to a disability rating in excess of 10 percent for the service-connected sciatica of the left lower extremity 

Entitlement to a disability rating in excess of 10 percent for the period prior to February 4, 2020, and to a disability rating in excess of 20 percent from that date for the service-connected sciatica of the right lower extremity 

The matters of entitlement to increased ratings for the service-connected lumbosacral strain and associated service-connected bilateral lower extremity radiculopathy conditions must be remanded because the evidence of record is not sufficient to guide the Board in adequately adjudicating these claims and in providing a statement of reasons and bases for the decisions.

As noted, these three issues involve increased rating claims. Thus, in addition to the evidence submitted on or after the Veteran's supplemental claim was received in February 2020, the Board has also reviewed the evidence regarding the Veteran's conditions during the year preceding the supplemental claim.

As a result, the Board has become aware of a possible conflict in the evidence. In the C&P examination conducted in March 2019 for the Veteran's peripheral nerve conditions, his abnormal gait is noted, but the etiology is not clearly stated. Also, the inclusion of this symptom in the examination report regarding the Veteran's peripheral nerve conditions suggests that the examiner may have been communicating that this abnormal gait was the result of the radiculopathy conditions. However, the March 2019 C&P examination of the back appears to instead indicate that the Veteran's abnormal gait is the result of muscle guarding or spasm of his thoracolumbar spine. Further, the March 2020 C&P examination does not indicate an abnormal gait at all. Consequently, an addendum opinion is required to provide guidance as to whether the Veteran's gait has improved over the year between these examinations, and to state, to the extent possible, whether his abnormal gait documented in March 2019 was attributable to his back, or peripheral nerve, condition.

Also, the Veteran's VA treatment records in the year preceding his February 2020 supplemental claim indicate swelling in his lower leg. The examination reports are unclear as to whether this swelling is related to his service-connected conditions or to some other cause. An addendum opinion is required to address this symptom. 

Accordingly, these matters are REMANDED for the following action:

1. Obtain an addendum opinion from an appropriate clinician regarding whether the Veteran's abnormal gait recorded in the March 2019 C&P examinations continued after those examinations and whether the abnormal gait is attributable to the Veteran's service-connected back condition, the service-connected radiculopathy conditions, or some other cause. 

Similarly, the clinician should clarify whether the leg swelling documented in VA treatment records in the year preceding the Veteran's February 2020 supplemental claim is attributable to the Veteran's service-connected conditions or to some other cause. 

 

THERESA M. CATINO

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Steven H. Johnston, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.