Citation Nr: 1829597 
Decision Date: 06/19/18 Archive Date: 07/02/18

DOCKET NO. 09-46 242 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to a rating in excess of 10 percent for a right wrist injury characterized as shell fragment wound, right ulna, with deformity, status postoperative styloid repair with degenerative arthritis.

2. Entitlement to a total disability rating based upon individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

G. Johnson, Associate Counsel


INTRODUCTION

The Veteran served in the United States Marine Corps from March 1966 to January 1969, and received multiple awards and medals including the Purple Heart Medal.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio.

The Veteran testified at a Travel Board hearing before the undersigned Veterans Law Judge in November 2015. A transcript of the hearing has been associated with the claims file.

The case was previously before the Board in January 2016, at which time, the Board assumed jurisdiction of the Veteran's request for TDIU, and remanded the issues to the Agency of Original Jurisdiction (AOJ) for additional development, including, orthopedic, muscle, and peripheral nerve VA examinations to determine the current severity of the Veteran's right wrist injury. There has been substantial compliance with the remand directives, with respect to the Veteran's claim for an increased rating for a right wrist injury. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

There are other issues that are not before the Board. In a January 2018 rating decision, the RO granted service connection for right upper extremity radiculopathy with an evaluation of 20 percent effective October 28, 2016; and service connection for residual scars located right dorsal forearm, radial wrist and second scar radial wrist and base of the dorsal right fourth finger with a noncompensable rating effective October 28, 2016. The Veteran has not appealed the assigned disability evaluations or effective dates of these awards. 

The issue of entitlement to a TDIU is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


FINDINGS OF FACT

1. Throughout the entire period on appeal, the Veteran's right wrist injury was manifested by moderate impairment of Muscle Group VIII, without ankylosis of the right wrist.

2. Throughout the entire period on appeal, the Veteran's right wrist injury was manifested by impairment of Muscle Group IX, with limitation of motion due to pain.


CONCLUSIONS OF LAW

Throughout the entire period on appeal, the criteria for a 20 percent rating for a right wrist injury of Muscle Group VIII and Muscle Group IX have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.73, Diagnostic Codes 5308, 5309 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C. §§ 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.326(a). In light of the favorable disposition of the claim for an increased rating for a right wrist injury, the Board finds that any deficiencies with regard to the duty to notify or assist is nonprejudicial, and thus, no further discussion of VA's duties to notify and assist is necessary.

II. Increased Rating for a Right Wrist Injury

The Veteran seeks a rating in excess of 10 percent for his service connected right wrist injury. At a November 2015 Board hearing, the Veteran testified that the pain in his right wrist increased with use, he wore a splint any time he used his right wrist, and his right wrist had reduced strength.

Disability ratings are based on the average impairment of earning capacity resulting from disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that rating. 38 C.F.R. § 4.7. Otherwise, the lower rating will be assigned. Id.

Although the Veteran's entire history is reviewed when assigning a disability evaluation, where service connection has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994), see also 38 C.F.R. § 4.1. The United States Court of Appeals for Veterans Claims (Court) has held that in determining the present level of a disability for any increased evaluation claim, the Board must consider the application of staged ratings. See Hart v. Mansfield, 21 Vet. App. 505, 510 (2007). In other words, where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of staged ratings would be necessary.

The Veteran bears the burden of presenting and supporting his claim for benefits. 38 U.S.C. § 5107(a). In its evaluation, the Board considers all information and lay and medical evidence of record. 38 U.S.C. § 5107(b). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Board gives the benefit of the doubt to the claimant. Id.

Service connection for a shell fragment wound with ununited fracture and retained foreign bodies with an evaluation of 20 percent from January 8, 1969 was granted in a June 1969 rating decision. The Veteran was rated under Diagnostic Code 5211 and has continued to be rated under that code. The rating decision issued in April 1980 granted a 100 percent rating from January 12, 1980 for one-month convalescence following a January 1980 excision of the ulnar styloid non-union; and restored the 20 percent rating effective March 1, 1980. A rating decision issued in April 1981 reduced the Veteran's disability rating for shell fragment wound, right wrist, status post excision of non-union, and with retained foreign bodies to 10 percent effective July 1, 1981. A January 1991 rating decision increased the Veteran's rating for shell fragment wound, right ulna with deformity, status post styloid non-union repair to 30 percent from March 1990. A May 1993 rating decision reduced the Veteran's rating for shell fragment wound right ulna with deformity status post styloid nonunion repair to 10 percent from August 1, 1993. The Veteran filed a claim for an increased rating in March 2008. A May 2008 rating decision continued the 10 percent rating for shell fragment wound right ulna with deformity status post styloid nonunion repair with degenerative arthritis.

The Veteran's right wrist injury is currently rated under 38 C.F.R. § 4.71a, Diagnostic Code 5211, using the major side ratings. The Board will consider whether the Veteran is entitled to receive higher ratings for his right wrist injury under all applicable diagnostic codes.

Handedness for the purpose of a dominant rating will be determined by the evidence of record, or by testing on VA examination. Only one hand shall be considered dominant. The injured hand, or the most severely injured hand, of an ambidextrous individual will be considered the dominant hand for rating purposes. 38 C.F.R. § 4.69. The medical evidence in this case indicates that the Veteran is right-handed.

When considering the combined ratings for muscle injuries, the skeletal muscles of the body are divided into 23 muscle groups in 5 anatomical regions. There are 3 muscle groups for the anatomical region of the forearm and hand (Diagnostic Codes 5307, 5308, and 5309). For compensable muscle group injuries which are in the same anatomical region but do not act on the same joint, the evaluation for the most severely injured muscle group will be increased by one level and used as the combined evaluation for the affected muscle groups. 38 C.F.R. § 4.55.

At the outset, the Board notes that an October 2016 VA examination has identified impairment of Muscle Groups VIII and IX associated with the service-connected disability.

Diagnostic Code 5308 applies to impairment of Muscle Group VIII. This muscle group involves the functions of extension of the wrist, fingers and thumb; and abduction of the thumb. This includes the muscles arising mainly from the external condyle of the humerus: extensors of the carpus, fingers, and thumb; supinator. A noncompensable rating is warranted for slight impairment of the extremity. A 10 percent rating is assignable for moderate impairment of the extremity. A 20 percent rating is warranted for moderately severe impairment of the extremity. A 30 percent rating is warranted for severe impairment of the dominant extremity. 38 C.F.R. § 4.73.

Diagnostic Code 5309 applies to impairment of Muscle Group IX. This group involves the functions of the forearm muscles, which act in strong grasping movement and are supplemented by the intrinsic muscles in delicate manipulative movements. The intrinsic muscles of the hand include: thenar eminence; short flexor; opponens; abductor and adductor of thumb; hypothenar eminence; short flexor, opponens and abductor of little finger; 4 lumbricales; 4 dorsal and 3 palmar interossei. 38 C.F.R. § 4.73. The hand is so compact a structure that isolated muscle injuries are rare, being nearly always complicated with injuries of bones, joints, tendons, etc.; therefore, it should be rated on limitation of motion, with a minimum of 10 percent. 38 C.F.R. § 4.73, Diagnostic Code 5309, Note.

Under 38 C.F.R. § 4.73, Diagnostic Codes 5301 to 5323 prescribe the evaluation of disabilities manifested by muscle injuries based upon the classifications of slight, moderate, moderately severe, or severe. 38 C.F.R. § 4.56(d)(1)-(4). The corresponding level of severity of a service-connected muscle injury is determined to a significant extent by the presence or absence of cardinal signs and symptoms of muscle disability, which consist of loss of power, lowered threshold of fatigue, weakness, pain, impairment of coordination, and uncertainty of movement. 38 C.F.R. § 4.56(c).

The regulations applicable to muscle disabilities provided that a "slight" muscle disability consists of a simple wound of muscle without debridement or infection. In such cases, service medical records typically show a superficial wound, with brief treatment and a return to duty. The wound will have healed, with good functional results and none of the cardinal signs and symptoms listed in 38 C.F.R. § 4.56(c). Objective findings typically include a minimal scar; no evidence of a fascial defect, atrophy, or impaired tonus; and no impairment of functioning or metallic fragments retained in the muscle tissue. 38 C.F.R. § 4.56(d)(1).

A "moderate" muscle disability consists of a through and through or deep penetrating wound of short track from a single bullet, small shell or shrapnel fragment, without the explosive effect of a high velocity missile, residuals of debridement, or prolonged infection. In such cases, there will be a service department record or other evidence of inservice treatment for the wound and a record of consistent complaint of one or more of the cardinal signs and symptoms of muscle disability, particularly a lowered threshold of fatigue after average use, affecting the particular functions controlled by the injured muscles. Objective findings typically include entrance and (if present) exit scars, small or linear, indicating a short track of the missile through muscle tissue; some loss of deep fascia or muscle substance or impairment of muscle tonus and loss of power or a lowered threshold of fatigue when compared to the sound side. 38 C.F.R. § 4.56(d)(2).

A "moderately severe" disability of the muscles is shown by a through and through or deep penetrating wound by a small high velocity missile or a large low velocity missile, with debridement, prolonged infection, or sloughing of soft parts, and intermuscular scarring. History and complaints of this injury typically include a record of hospitalization for a prolonged period for treatment of a wound, a record of consistent complaint of cardinal signs and symptoms of muscle disability, and, if present, evidence of an inability to keep up with work requirements. Objective findings of a moderately severe muscle wound are entrance and (if present) exit scars indicating the track of the missile through important muscle groups; indications on palpation of moderate loss of deep fascia, muscle substance, or normal firm resistance of muscles compared with the sound side; and tests of strength and endurance compared with the sound side demonstrating positive evidence of impairment. 38 C.F.R. § 4.56(d)(3).

A "severe" muscle disability is a type of injury caused by a through and through or deep penetrating wound due to high-velocity missile, or large or multiple low velocity missiles, or with shattering bone fracture or open comminuted fracture with extensive debridement, prolonged infection, or sloughing of soft parts, and intermuscular binding and scarring. 38 C.F.R. § 4.56(d)(4). History includes service department records or other evidence showing hospitalization for a prolonged period for treatment of wound, a record of consistent complaints of cardinal signs and symptoms of muscle disability, as defined by 38 C.F.R. § 4.56(c), which are worse than those shown for moderately severe muscle injuries, and, if present, evidence of inability to keep up with work requirements. Id. Objective findings include ragged, depressed and adherent scars indicating wide damage to muscle groups in missile track; palpation shows loss of deep fascia or muscle substance, or soft flabby muscles in wound area; and muscles swell and harden abnormally in contraction. Id.

Tests of strength, endurance, or coordinated movements compared with the corresponding muscles of the uninjured side indicate severe impairment of function. 38 C.F.R. § 4.56. If present, the following are also signs of severe muscle disability: x-ray evidence of minute multiple scattered foreign bodies indicating intermuscular trauma and explosive effect of the missile; adhesion of scar to one of the long bones, scapula, pelvic bones, sacrum or vertebrae, with epithelial sealing over the bone rather than true skin covering in an area where bone is normally protected by muscle; diminished muscle excitability to pulsed electrical current in electrodiagnostic tests; visible or measurable atrophy; adaptive contraction of an opposing group of muscles; atrophy of muscle groups not in the track of the missile, particularly of the trapezius and serratus in wounds of the shoulder girdle; or induration or atrophy of an entire muscle following simple piercing by a projectile. Id.

A muscle injury rating will not be combined with a peripheral nerve paralysis rating of the same body part, unless the injuries affect entirely different functions. 38 C.F.R. § 4.55(a).

Under Diagnostic Code 5210, nonunion of the radius and ulna, with a flail false joint, warrants a 50 percent rating for the major upper extremity.

Under Diagnostic Code 5211, a 10 percent rating is warranted for nonunion of the ulna with bad alignment. A 20 percent rating is warranted for nonunion of the ulna of the lower half. A 30 percent rating is warranted for nonunion of the ulna in the upper half of the major extremity with false movement and without loss of bone substance or deformity. A 40 percent rating is warranted for nonunion of the ulna in the upper half of the major extremity with false movement, and with loss of bone substance (1 inch (2.5 centimeters) or more) and marked deformity.

Impairment of supination and pronation of the hand is rated under Diagnostic Code 5213. A 10 percent rating is warranted for limitation of supination to 30 degrees or less. A 20 percent rating is warranted for limitation of pronation with motion lost beyond the last quarter of the arc, and the hand does not approach full pronation; or for bone fusion where the hand is fixed near the middle of the arc or moderate pronation. A 30 percent rating is warranted for limitation of pronation with motion lost beyond middle of arc; or for bone fusion where the major hand is fixed in full pronation. A 40 percent rating is warranted for bone fusion where the major hand is fixed in supination or hyperpronation.

A note following these Diagnostic Codes indicates that in all the forearm and wrist injuries, Diagnostic Codes 5205 through 5213, multiple impaired finger movements due to tendon tie-ups, muscle or nerve injury, are to be separately rated and combined not to exceed rating for loss of use of the hand. 38 C.F.R. § 4.71a.

Ankylosis of the wrist is rated under Diagnostic Code 5214. A 30 percent rating is warranted for favorable ankylosis of the major wrist in 20 degrees to 30 degrees flexion. A 40 percent rating is warranted for ankylosis of the major wrist in any other position except favorable. A 50 percent rating is warranted for unfavorable ankylosis of the major wrist, in any degree of palmar flexion, or with ulnar or radial deviation. 38 C.F.R. § 4.71a.

Limitation of motion of the wrist is rated under Diagnostic Code 5215. A 10 percent rating is warranted where palmar flexion is limited in line with the forearm, or where dorsiflexion is less than 15 degrees. 38 C.F.R. § 4.71a. This is the maximum schedular rating based on limitation of motion of the wrist under this diagnostic code. A higher schedular rating is only warranted when there is evidence of ankylosis. 38 C.F.R. § 4.71a, Diagnostic Code 5214.

X-rays of the Veteran's right wrist reveal evidence of arthritis from October 1992.

Under Diagnostic Code 5003, degenerative arthritis established by X-ray findings will be rated based on limitation of motion under the appropriate diagnostic codes for the specific joint(s) involved. When, however, the limitation of motion of the specific joint(s) involved is noncompensable under the appropriate diagnostic codes, a 10 percent rating is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, a 10 percent evaluation is warranted if there is X-ray evidence of involvement of two or more major joints or two or more minor joint groups and a 20 percent rating is warranted if there is X-ray evidence of two or more major joints or two or more minor joint groups and there are occasional incapacitating exacerbations. Id.

Normal range of motion of the wrist includes dorsiflexion (extension) from zero to 70 degrees, palmar flexion from zero to 80 degrees, ulnar deviation from zero to 45 degrees, and radial deviation from zero to 20 degrees. See 38 C.F.R. § 4.71a, Plate I.

When evaluating disabilities of the musculoskeletal system, 38 C.F.R. § 4.40 allows for consideration of functional loss due to pain and weakness causing additional disability beyond that reflected on range of motion measurements. DeLuca v. Brown, 8 Vet. App. 202 (1995). Further, 38 C.F.R. § 4.45 provides that consideration also be given to decreased movement, weakened movement, excess fatigability, incoordination, and pain on movement, swelling, and deformity or atrophy of disuse. The United States Court of Appeals for Veterans Claims (Court) has also issued the opinion of Correia v. McDonald, 28 Vet. App. 158, 169-170 (2016), which clarifies additional requirements that VA examiners should address when assessing musculoskeletal disabilities, holding specifically, that the joints involved should be tested for pain on both active and passive motion, in weight-bearing and non-weight-bearing and, if possible, with the range of the opposite undamaged joint. In Sharp v. Shulkin, 29 Vet. App. 26 (2017), the Court held that VA examiners must provide opinions regarding flare-ups based upon estimates derived from information procured from relevant sources, including lay statements, when a flare-up is not observable at the time of examination.

At the outset the Board notes that service treatment records reflect that the Veteran was hospitalized from June 1968 to November 1968 after sustaining multiple injuries, including injuries to his right arm, from grenade shrapnel. X-rays of the right ulna revealed a small portion of the ulna styloid process which had not united with the remainder of the bone. In June 1968 the Veteran underwent debridement and closure of his right arm, and fracture of the right ulna was treated with immobilization dressing. Physical examination revealed that the Veteran had range of motion of 10 degrees dorsiflexion to 30 degrees of palmar flexion in the right wrist. There was no tenderness over the styloid process with the strengths of the right finger flexors decreased. The Veteran was sent to physical therapy for range of motion exercises to the fingers and wrists. Prior to discharge from the hospital, the treatment provider noted that the Veteran had improved strength of the ring finger flexors and a good pinching grasp in the right hand. The treatment provider noted that the Veteran was physically fit to return to duty, and was discharged to full duty in November 1968.

Post service x-rays revealed that the Veteran continued to have minute multiple scattered foreign bodies following debridement and closure of the Veteran's right arm in June 1968.

An April 1969 x-ray revealed an old ununited fracture of the styloid process of the ulna; with slight bowing of the distal ulna, which the treatment provider opined was probably secondary to an old healed fracture. The treatment provider also noted that there were several tiny metallic foreign bodies in the distal posterior soft tissues of the forearm and the carpal bones.

A January 1980 VA treatment record reflects a diagnosis of ulnar styloid excision, right wrist, secondary to ulnar styloid non-union. An x-ray revealed an old ulnar styloid non-union. The Veteran underwent an excision of the ulnar styloid non-union. The treatment provider noted that the Veteran had complained of right wrist pain, especially on ulnar deviation. Physical examination was pertinent for well-healed scar over dorsal surface of his right wrist and pain over the area of the ulnar styloid on ulnar deviation.

An October 1992 x-ray revealed minimal degenerative arthritic changes; small exostosis was noted at the distal end of the shaft of the right radius in the medial aspect; small cystic changes were noted in the distal end of the shaft of the right ulna; and several small metallic bodies of various sizes were noted in the region of the right wrist and hand.

The Veteran was afforded a VA examination in March 2008, which reflected a diagnosis of shell fragment wound to the right wrist with fracture and arthritis. The Veteran reported that he had a shell fragment wound to his right wrist during service, and had some fractures at the time. The examiner inaccurately noted that the Veteran did not have any surgery. As previously discussed, the Veteran underwent debridement in approximately June 1968, and he underwent an excision of the right ulnar styloid non-union in January 1980.

During the March 2008 VA examination, the Veteran reported persistent aching and pain in his wrist, and reported that over the last two to three years the pain in his right wrist had gotten worse with increasing soreness, pain and tenderness. The examiner noted that the Veteran wore a bit of an elastic support on his wrist. Physical examination of the Veteran revealed dorsiflex of the right wrist to 35 degrees, palmar flexion to 45 degrees, radial deviation to 20 degrees, and ulnar deviation to 45 degrees, with pain at the extremes of motion. The Veteran reported repetitive motion often caused increasing symptoms. The examiner did not note a change during examination. The Veteran reported that flare-ups occurred with heavy repetitive use. However, no change was noted during the examination.

An August 2008 x-ray of the Veteran's right wrist revealed degenerative changes of the distal radius and ulna, radiocarpal articulation, first metacarpal trapezial articulation and first metacarpophalangeal joints (MCP) joint remain. The treatment provider noted that some narrowing of the distal intercarpal articulation was also again evident, and numerous radiopaque metallic foreign bodies (shrapnel) remain.

The Veteran was afforded a muscle injury VA examination in August 2014, which reflected a diagnosis of shell fragment wound, right ulna with deformity with styloid non-union repair with degenerative arthritis and residual scars. Although the examiner initially noted that the Veteran had a penetrating muscle injury from fragments from a Vietnamese booby trap, which injured the Veteran's distal right ulna, later in the examination report, the examiner indicated that the Veteran did not have or ever had an injury to a muscle group of the forearm or hand. However, muscle strength testing of the Veteran's right wrist flexion (Group VII) and right wrist extension (Group VIII) revealed less than normal strength. The Veteran regularly wore a brace due to his right wrist condition. The examiner also noted that imaging studies did not reveal evidence of retained metallic fragments. The examiner did not discuss the April 1969, October 1992, or the August 2008 x-rays which revealed evidence of metallic fragments in the Veteran's right wrist.

The Veteran also underwent a wrist conditions VA examination, by the same examiner in August 2014, which reflected a diagnosis of shell fragment wound, right ulna with deformity with styloid non-union repair with degenerative arthritis and residual scars. Physical examination of the Veteran in August 2014 revealed right wrist plantar flexion to 45 degrees with pain at 30 degrees; right wrist dorsiflexion (extension) to 45 degrees with pain at 30 degrees; right wrist ulnar deviation at 30 degrees with pain at 30 degrees; right wrist radial deviation at 0 degrees with pain at 0 degrees. The examiner noted that the Veteran did not have additional limitation of range of motion of the wrist following repetitive use testing. The examiner noted that the Veteran had functional loss and/or impairment of the right wrist, which included less movement than normal, weakened movements, excess fatigability, incoordination, impaired ability to execute skilled movements smoothly, pain on movement, swelling, and deformity. The Veteran reported flare-ups of the right wrist which included pain, weakness and stiffness every day from two to three hours a day, resulting in significant loss of motion, and hypermobility in distal ulna. The examiner noted that pain, weakness, fatigability, and incoordination could significantly limit functional ability during flare-ups or when the joint was used repeatedly over a period of time. The examiner noted that there was additional pain on use, but no additional loss of range of motion due to pain, weakness, fatigability and incoordination. Physical examination of the Veteran's left wrist revealed normal range of motion with no pain on motion. Muscle strength testing revealed active movement against some resistance of the Veteran's right wrist at flexion and extension. The Veteran's left wrist had normal muscle strength at flexion and extension. Physical examination did not reveal ankylosis of either wrist joint.

The Veteran underwent a VA examination for muscle injuries in October 2016, which revealed a diagnosis of right wrist shrapnel injury from 1968. The examiner noted that the Veteran had a penetrating muscle injury of his right wrist. The Veteran had been hospitalized from June 1968 to November 1968, with a diagnosis of fracture, open, comminuted, styloid process, right ulna related to a grenade explosion injury. The Veteran reported constant right wrist pain that increased with any use. The examiner noted that the Veteran had injuries to right muscle group VIII and IX of his right forearm and hand. The Veteran had loss of power, weakness, lowered threshold of fatigue and fatigue-pain of right muscle group VIII and IX. Muscle strength testing revealed normal strength for right muscle group VIII and IX; and less than normal strength for handgrip. The Veteran regularly wore a brace due to his right wrist condition. X-rays revealed evidence of retained shell fragment(s) and/or shrapnel of right muscle group VIII and IX. The examiner opined that the disabilities associated with each of the affected groups would be considered moderate.

The Veteran also underwent a VA examination for wrist conditions, by the same examiner in October 2016, which revealed a diagnosis of degenerative arthritis of the right wrist from 1991; right wrist shrapnel injury from 1968; and right ulnar styloid fracture from 1968. The Veteran reported that he had constant wrist pain and that it increased with any use. The Veteran also reported decreased range of motion of his right wrist. The examiner noted that the Veteran's right wrist range of motion was abnormal or outside of normal range. Physical examination of the right wrist revealed palmar flexion to 45 degrees; dorsiflexion to 45 degrees, ulnar deviation to 25 degrees, and radial deviation to 10 degrees. The examiner noted that pain was noted on examination and caused functional loss on palmar flexion, dorsiflexion, ulnar deviation, and radial deviation; and there was pain with weight bearing. The Veteran also had ulnar right wrist pain with palpation. The Veteran did not have additional loss of function or range of motion after repetitive use testing; and pain, weakness, fatigability, or incoordination did not significantly limit functional ability with repeated use over a period of time. The examiner also noted that the examination was being conducted during a flare-up and pain, weakness, fatigability or incoordination did not significantly limit functional ability with flare-ups. The examiner also noted that the Veteran had abnormal range of motion of his left wrist. Muscle strength testing of the right wrist revealed normal strength on flexion and extension. A reduction in muscle strength was not noted and the Veteran did not have muscle atrophy. The Veteran did not have ankylosis of the right wrist.

Resolving all reasonable doubt in favor of the Veteran, the Board finds that the symptoms of the Veteran's right wrist injury warrants a 20 percent rating, but no higher, for the entire period on appeal. The Board finds that the Veteran's muscle group injuries are entitled to a 20 percent rating pursuant to 38 C.F.R. §§ 4.55, 4.73, Diagnostic Code 5308 and 5309.

In January 2018, the RO affirmed a 10 percent evaluation of the Veteran's right wrist injury based on Muscle Group VIII injury evaluated as moderate. Based upon the October 2016 VA examination, the Board finds that the Veteran also has impairment of Muscle Group IX. The Board finds that the Veteran's Muscle Group VIII and Muscle Group IX injuries are in the same anatomical region, but they do not act on the same joint. 38 C.F.R. § 4.55. As a result, the most severely injured muscle group will be increased by one level and used as the combined evaluation for the affected muscle groups. In this case, both muscle groups injuries would typically result in a 10 percent rating; therefore, the Board has determined that a 20 percent combined rating is appropriate for the Veteran's muscle group injuries.

Regarding Muscle Group VIII, the medical evidence reveals moderate impairment of the right Muscle Group VIII, consisting of a deep penetrating wound from shrapnel fragment. Service treatment records reflect that the Veteran was hospitalized from June 1968 to November 1968 after he sustained multiple injuries from grenade shrapnel, including a right ulna fracture. In June 1968, the Veteran underwent debridement and closure of his right arm, and his right ulna fracture was treated with immobilization dressing. The service treatment records do not indicate that the Veteran had prolonged infection following debridement of Muscle Group VIII. The Veteran was discharged to full duty in November 1968.

However, the medical evidence does not reflect moderately severe impairment of the Veteran's right Muscle Group VIII injury. A moderately severe disability is shown by a through and through or deep penetrating wound by a small high velocity missile or a large low velocity missile, with debridement, prolonged infection, or sloughing of soft parts, and intermuscular scarring. Although the Board notes, that service treatment records indicate that the Veteran underwent debridement following his injury, there is no evidence that the Veteran experienced prolonged infection or sloughing of soft parts, or intermuscular scarring of Muscle Group VIII. Nor do objective findings reveal indications on palpation of moderate loss of deep fascia, muscle substance, or normal firm resistance of muscles compared with the sound side. Finally, the Board notes that the evidence of record does not indicate that the Veteran's Muscle Group VIII injury resulted in the inability to keep up with work requirements following the Veteran's injury in service. Notably, service treatment records reflect that the Veteran returned to full duty without restrictions, and post-service treatment records reflect that the Veteran continued to work in occupations that required the use of Muscle Group VIII; for example, a January 1980 statement from the Veteran reflects that he worked in a meatpacking plant, which required heavy lifting for eight hours a day. Although the Board acknowledges that the Veteran reported that he retired early in 2005, after working 15 years as a custodian for the post office because of his right wrist injury, the Board notes that it was more than 35 years after the Veteran was injured in service. Therefore, the Board finds that a moderately severe disability of the Veteran's right Muscle Group VIII has not been shown.

The medical evidence also does not reflect severe impairment of the Veteran's right Muscle Group VIII injury. A severe disability is shown by a deep penetrating wound with debridement, prolonged infection, or sloughing of soft parts, and intermuscular scarring; which is not shown in this case. Nor do objective findings reveal ragged, depressed and adherent scars indicating wide damage to muscle groups in missile track; palpation showing loss of deep fascia or muscle substance, or soft flabby muscles in wound area; or muscles which swell and harden abnormally in contraction. Also, as previously discussed, the evidence of record does not indicate that the Veteran's Muscle Group VIII injury resulted in the inability to keep up with work requirements following the Veteran's injury in service. Finally, although, the Board acknowledges that x-ray evidence reveals evidence of minute multiple scattered foreign bodies in the Veteran's Muscle Group VIII, test of strength, endurance or coordinated movements, when compared with the corresponding muscles of the uninjured side do not indicate severe impairment of function. Notably, the October 2016 VA examinations found that the Veteran had less strength than normal of grip strength, and normal strength for his Group VIII muscles. In addition, the August 2014 VA examination revealed that the Veteran's strength was at worse less than normal strength for Group VIII muscles. Therefore, the Board finds that severe disability of the Veteran's right Muscle Group VIII has not been shown. Therefore, the Board finds that the symptoms of the Veteran's right Muscle Group VIII injury warrants a maximum 10 percent rating.

Regarding Muscle Group IX, the medical evidence reflects impairment of the functions of the forearm muscles, which act in strong grasping movement and are supplemented by the intrinsic muscles in delicate manipulative movements. Diagnostic Code 5309 notes that impairment of Muscle Group IX are to be rated on limitation of motion, with a minimum of 10 percent. 38 C.F.R. § 4.73, Diagnostic Code 5309, Note. Under Diagnostic Code 5215, a 10 percent rating is warranted where palmar flexion is limited in line with the forearm, or where dorsiflexion is less than 15 degrees. 38 C.F.R. § 4.71a. Medical records reveal that the Veteran's palmar flexion was limited at most to 45 degrees and dorsiflexion was limited to at most 45 degrees. Therefore, the Board finds that the limitation of motion of the Veteran's right wrist injury of Muscle Group IX, warrants a maximum 10 percent rating.

Further, the Board finds that the symptoms of the Veteran's right wrist injury did not manifest as ankylosis. 38 C.F.R. § 4.71a, Diagnostic Code 5214. Although there is limitation of motion of the wrist, there is no objective evidence of ankylosis. Ankylosis is defined as "immobility and consolidation of a joint due to disease, injury, surgical procedure." Lewis v. Derwinski, 3 Vet. App. 259 (1992) (citing Saunders Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health at 68 (4th ed. 1987)).

Even when considering functional limitations due to pain and other factors identified in 38 C.F.R. §§ 4.40, 4.45, 4.59 the Board finds that the functional loss from the Veteran's right wrist injury does not approximate ankylosis. VA considers granting a higher rating in cases in which functional loss due to pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca, supra. The Court has clarified that although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Instead, the Mitchell Court explained that pursuant to 38 C.F.R. §§ 4.40 and 4.45, the possible manifestations of functional loss include decreased or abnormal excursion, strength, speed, coordination, or endurance, as well as less or more movement than is normal, weakened movement, excess fatigability, and pain on movement (as well as swelling, deformity, and atrophy) that affects stability, standing, and weight-bearing. See 38 C.F.R. §§ 4.40, 4.45. Thus, functional loss caused by pain must be rated at the same level as if the functional loss were caused by any of the other factors cited above. Thus, in evaluating the severity of a joint disability, VA must determine the overall functional impairment due to these factors. The provisions of 38 C.F.R. § 4.59, which relate to painful motion, are not limited to arthritis and must be considered when raised by the claimant or when reasonably raised by the record. Burton v. Shinseki, 25 Vet. App. 1 (2011).

As noted, it is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. The Court previously indicated that the provisions of 38 C.F.R. §§ 4.40 and 4.45, should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996). However, the Court has suggested that the plain language of 38 C.F.R. § 4.59 indicates that it is potentially applicable to the evaluation of musculoskeletal disabilities involving joint or periarticular pathology that are painful, whether or not evaluated under a diagnostic code predicated on range of motion measurements. See Correia, supra; Southall-Norman v. McDonald, 28 Vet. App. 346 (2016).

Notably, the October 2016 examination was noted to have been conducted during a flare-up and range of motion remained limited but unchanged from initial range of motion. Also, while pain, weakness, fatigability or incoordination were noted to significantly limit functional ability with repeated use over time, range of motion again remained unchanged.

Therefore, although the Board acknowledges the functional impairment due to the Veteran's right wrist injury, the Board finds that the symptoms of the Veteran's right wrist injury did not manifest as ankylosis even with consideration of functional impairment due to pain, on repetitive motion, and with flares, as outlined in DeLuca, supra.

The Board has considered the application of Diagnostic Code 5003, which allows for a separate 10 percent rating for limitation of motion, where there is radiographic evidence of arthritis. 38 C.F.R. § 4.71a, Diagnostic Code 5003. However, a separate additional rating under Diagnostic Code 5003 is not warranted because it applies only where limitation of motion under an applicable Diagnostic Code is non-compensable. In the present case, the Veteran is in receipt of a compensable rating for limitation of movement in his right wrist, pursuant to Diagnostic Code 5308. Thus, a separate rating is not warranted under Diagnostic Code 5003, for the Veteran's right wrist injury, at any time during the period on appeal.

Therefore, the Board finds that the Veteran has moderate impairment of Muscle Group VIII and impairment of Muscle Group IX with limitation of motion, which warrants a 20 percent combined rating for the Veteran's muscle group injuries.

Accordingly, resolving all reasonable doubt in favor of the Veteran and based on the evidence of record, the Board finds that evidence of record supports the assignment of a 20 percent rating for the Veteran's right wrist injury. See 38 U.S.C. § 5107; 38 C.F.R. § 4.71a., 38 C.F.R. § 4.73, Diagnostic Codes 5308, 5309; Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990).

The Board finds that referral for extraschedular consideration is not warranted. See 38 C.F.R. § 3.321 (b); Thun v. Peake, 22 Vet. App. 111, 114 (2008); aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The Veteran's right wrist and associated limitations as outlined above, as well as other effects of the Veteran's pain and limited motion in various contexts of daily life, are contemplated by the applicable rating criteria, which take into account pain and functional loss due to factors such as pain, weakness, incoordination, and fatigability. See 38 C.F.R. §§ 4.40, 4.45, 4.71a, General Rating Formula. In this regard, the rating criteria serve as markers of disability at different levels of severity, even if no description of how such disability may affect functioning in the context of life and work is provided in the rating schedule. Cf. Doucette v. Shulkin, 28 Vet. App. 366, 369, 371 (2017) (holding that criteria for hearing loss, which are based solely on numerical results of audiological testing, contemplate the functional effects of hearing loss in "various contexts," as these are "precisely the effects that VA's audiometric tests are designed to measure"). Thus, the sole fact that an example or description of functional impairment, as may be shown in the evidentiary record, is not provided in the rating criteria does not in itself support a finding that the disability at issue is not adequately contemplated by the rating schedule. Cf. id. The Veteran's functional impairment, as described in the examination reports, appears consistent with right wrist pain and limited motion, and no medical professional has suggested otherwise. To the extent that the Veteran has related nerve impairment and scars due to his right wrist injury, the effects of this symptomatology are compensated by the ratings assigned these disabilities. The evidence does not show that the Veteran's symptoms and functional impairment are different from, or more severe than, the occupational impairment contemplated by the General Rating Formula such as to render its application impractical in this case. See 38 C.F.R. § 3.321; Thun, 22 Vet. App. at 114. Accordingly, as the Veteran's right wrist pathology is not manifested by an exceptional or unusual disability picture, the Board will not refer this case for extraschedular consideration. See id. 

The Board notes that it is remanding the issue of entitlement to TDIU for a new VA opinion. The purpose of the remand, as discussed below, is to obtain a new medical opinion. The Board finds that there is no reasonable possibility that such development would affect the determination as to whether extraschedular referral is warranted for the Veteran's right wrist disability. In this regard, the basis of the Board's conclusion that such referral is not warranted is that the Veteran's right wrist disability does not constitute an exceptional or unusual disability picture. The Board's decision on this issue does not turn on whether the Veteran's disability causes marked interfered with employment. See Thun, 22 Vet. App. at 118-19 (holding that the Board's finding that the rating criteria were adequate to evaluate the claimant's disability was a sufficient basis for denying extraschedular consideration without regard to whether there was marked interference with employment). Thus, the Board finds that the record is sufficiently developed to determine whether extraschedular consideration is warranted, and that this issue is not intertwined with the issue of entitlement to a TDIU in this case. Cf. Brambley v. Principi, 17 Vet. App. 20 (2003). 

In rendering this decision, the Board does not diminish the fact that the Veteran's right wrist disability is significantly disabling. The Board's determination is limited to whether a higher evaluation may be assigned under the applicable legal framework. While the evidence supports the assignment of a 20 percent rating for the Veteran's right wrist disability, the preponderance of the evidence however, weighs against a rating higher than 20 percent for this disability and thus, the benefit-of-the-doubt rule does not apply. See 38 U.S.C. 5107; 38 C.F.R. § 3.102.


ORDER

Entitlement to a 20 percent rating, but no higher, for a right wrist injury of Muscle Group VIII and Muscle Group IX under Diagnostic Code 5308 and 5309, is granted, for the entire period on appeal, subject to the laws and regulations governing the payment of monetary benefits.


REMAND

The Veteran seeks a total disability rating based upon individual unemployability. At a November 2015 Board hearing, the Veteran testified that he had to retire early due to his service-connected disabilities, including his right wrist injury.

A supplemental statement of the case (SSOC) regarding the claim for a TDIU was issued in January 2018. Additional VA treatment records and VA examinations associated with other service-connected disabilities have been associated with the record since the issuance of the SSOC that potentially relate to the TDIU. When evidence is received prior to the transfer of a case to the Board, an SSOC must be furnished to the Veteran as provided in 38 C.F.R. § 19.31, unless the additional evidence is duplicative or not relevant to an issue on appeal. 38 C.F.R. § 19.37(a). Therefore, the appeal must be returned to the RO for readjudication and issuance of a supplemental statement of the case. See 38 C.F.R. §§ 19.31, 19.37. Moreover, the Board has granted higher ratings herein. The Board finds that a current VA examination would be useful in this case to assess employability based on all of the Veteran's service-connected disabilities.

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a VA general medical examination in regard to his TDIU request. The record must be made available for the examiner to review. The VA examiner should provide an opinion as to the functional impairment caused solely by the Veteran's service-connected disabilities (ischemic heart disease; diabetes mellitus type II; residuals of ventral hernia; right upper extremity radiculopathy; right left Muscle Group XIV injury; bilateral defective hearing, SFW of the right ulna with deformity; scars of the right shoulder; posttraumatic stress disorder; tinnitus; SFW of the abdomen with damage to Muscle Group XIX with embolic colitis, s/p right hemicolectomy; right knee osteoarthritis; postoperative nose injury with chronic sinusitis; scars of the face, left thigh, abdomen, right leg, right knee, and right forearm), either alone or in combination with each other, given his education and occupational experience, which could impact either daily living or industrial capacity. The examiner should not consider the Veteran's age or any nonservice-connected disabilities. The examiner should provide a complete rationale for all opinions expressed and conclusions reached.

2. The Veteran and his representative should be provided a SSOC, which considers all pertinent evidence, including the VA treatment records and VA examinations associated with the record since the January 2018 SSOC. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112.




_________________________________________________
S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs